UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TRUSTEES OF THE UNITED                          :
HEALTH AND WELFARE FUND                              **MEMORANDUM AND ORDER**
                                                :
                                                     08 Civ. 11219 (KNF)
                  Plaintiffs,                   :

        -against-                               :

N. KOFSKY & SON, INC., KOFSKY & SON,            :
INC. a/k/a KOFSKY & SON PLUMBING,
STEPHEN KOFSKY and RICHARD KOFSKY,              :
Individually and jointly and severally,
                                                :
                  Defendants.
------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

> Plaintiffs, Trustees of the United Health and Welfare Fund ("Fund"), bring claims

pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001

et seq., and the Labor Management Relations Act of 1974 ("LMRA"), 29 U.S.C. § 152 et seq.,

against defendants N. Kofsky & Son, Inc. ("Kofsky"), Kofsky & Son, Inc. a/k/a Kofsky & Son

Plumbing ("Kofsky Plumbing"), Richard Kofsky and Stephen Kofsky.

> The plaintiffs allege that:  (i) defendant Kofsky failed to make monetary contributions to

the Fund on behalf of Kofsky's employees, as required by a collective bargaining agreement

("Agreement") between Kofsky and the International Longshoremen's Association, Local 976

("Union") and Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145; (ii) defendants

Kofsky and Kofsky Plumbing are jointly and severally liable for the Fund's unpaid benefit

contributions because they share an alter ego or single-employer relationship; and (iii) Richard

Kofsky and Stephen Kofsky are individually liable to the Fund because they conspired to

defraud it of the required benefit contributions by transferring assets from Kofsky to Kofsky

Plumbing, which, since it is not a signatory to the Agreement and, thus, not a "union company,"

enabled them to conceal Kofsky's financial activity.  The plaintiffs seek damages as set forth in

an audit report conducted in connection with this action, together with interest, liquidated

damages, attorneys' fees and costs.

Before the Court is the plaintiffs' motion for summary judgment made pursuant to Rule

56 of the Federal Rules of Civil Procedure.  Defendants oppose the motion.

## BACKGROUND

### *The Parties*

The Fund is a jointly-administered, multi-employer, labor-management trust fund

established and maintained pursuant to the Agreement in accordance with 29 U.S.C. § 186(c)(5)

and certain trust agreements.  The Fund maintains business offices in Englewood Cliffs, New

Jersey, and is authorized to maintain suit as an independent legal entity under 29 U.S.C.

§ 1132(d)(1).  The purpose of the Fund is to receive and collect benefit contributions and to

provide various health and welfare benefits to eligible employees on whose behalf employers

contribute to the Fund, pursuant to their collective bargaining agreements.  The Trustees of the

Fund are fiduciaries of the Fund within the meaning of 29 U.S.C. §§ 1002(21) and 1132.

At the time this action was commenced, in December 2008, Kofsky and Kofsky

Plumbing were for-profit corporations doing business in New York and engaged in the plumbing

trade.  The corporations maintained a common business office at 1525 Basset Avenue, Bronx,

New York.  According to the New York State Department of State, Division of Corporations

Web site, Kofsky Plumbing's date of incorporation is March 14, 2007.  The Web site also

indicates that Kofsky Plumbing was dissolved, by proclamation, on April 25, 2012.

In their submissions in support of the instant motion, the plaintiffs contend, variously, that Kofsky Plumbing began performing plumbing work on or about July 24, 2009, and that it began performing such work six months later, that is, in or about late 2009.  It is undisputed that Kofsky Plumbing is not a signatory to the Agreement, never signed a collective bargaining agreement with the Union and has made no contributions to the Fund.

At the time this action was commenced, Richard Kofsky was the president and sole shareholder and owner of Kofsky and the owner of fifty-one percent (51%) of the shares of Kofsky Plumbing.  At the time this action was commenced, Richard Kofsky's son, Stephen Kofsky, was the owner of forty-nine percent (49%) of the shares of Kofsky Plumbing.  The defendants are employers within the meaning of Sections 3(5) and 515 of ERISA, 29 U.S.C. §§ 1002(5) and 1145.

*The Agreement*

The Agreement between Kofksy and the Union requires Kofsky to make contributions to the Fund in specific amounts for each hour of work "for each day a regular employee works" in an area of employment covered by the Agreement.  The Agreement covers workers engaged in "the industry of maintenance of existing buildings, including plumbing replacement, restoration, [and] . . . all other related work . . . in the classifications set forth in [the Agreement]."  The Agreement provides for a dues check off whereby an employer "shall deduct from the wages of each employee who so authorizes in writing[,] for the period that such authorization remains in effect," a weekly sum to be forwarded to the Union.

The Agreement became effective on March 6, 2004, and included a provision stating that it would "continue in full force and effect until midnight on March 5, 2007," when it would terminate, provided proper and timely notice was given by the party seeking termination.

3

Specifically, the Agreement required a party desiring to terminate or renegotiate its terms to give the other party "written notice to that effect not less that sixty (60) days nor more than ninety (90) days prior to March 5, 2007." If a party failed to provide such notice, the Agreement, by its terms, would "automatically renew for further periods of one (1) year."

The plaintiffs contend that the Agreement continues through the present because: (i) as stated by Alfred Piscino, the Fund's administrator, in his declaration submitted in support of the plaintiffs' motion, no record exists in the Fund's offices indicating that either the defendants or the Union sent a notice to terminate or modify the Agreement; (ii) during his deposition, Richard Kofsky testified that he did not recall ever sending a letter seeking to terminate or modify the Agreement; and (iii) in their Local Rule 56.1(b) Statement of Material Facts, the defendants, responding to the plaintiffs' statement that the Agreement "had a continuous term from March 6, 2004 through the present," state only that they "lack sufficient knowledge of the facts alleged to make an admission or denial" with respect to this assertion. It is undisputed that Kofsky made some payments to the Fund, pursuant to the Agreement, during the relevant period

*The Audit*

The plaintiffs retained David Falda ("Falda"), a certified public accountant, to perform an audit to assess the defendants' compliance with their benefit-contributions obligations. In the declaration he submitted in support of the plaintiffs' motion, along with the audit report he prepared, Falda states that he has been an auditor for the plaintiffs for about ten years and that he reviewed the Agreement as well as the defendants' payroll and tax records and cash disbursement journals in order to assess the amount of the defendants' delinquency with respect to contributions owed to the Fund for hours of work performed by the defendants' employees, "which was plumbing work covered by the [Agreement]." Falda also states that he prepared a

4

report of dues delinquencies owed to the Union.

Falda does not state when he first began preparing the audit report but asserts that, in February 2013, after he "finally" received at least some of the records he had requested previously and which had been withheld to that point, he prepared an estimated audit for the period January 1, 2002, through June 30, 2012.

According to Falda, the audit covers delinquencies attributable to both Kofsky and Kofsky Plumbing. Falda states that he "discovered" Kofsky Plumbing in the course of his investigation of Kofsky's financial records. Falda determined that Kofsky Plumbing had begun operating in or about July 2009. Falda explained that he examined the documents available to him but notes that he was not given any payroll tax forms for Kofsky for the period January 2008 through July 2009; as a result, he "ha[s] no data for those months." Falda explained further that he determined that the employees identified in the payroll records were performing covered work based on his review of payroll records and conversations he had with the defendants' accountant. Falda avers that because he did not receive a complete set of records from the defendants, including "weekly documents for the earlier years" and corporate tax returns, his audit report is based on "reasonable assumptions as to the periods worked" and that his report provides a "reasonable worksheet" and "reflects true and actual amounts" due from both corporate defendants.

Based on his investigation, Falda determined that Kofsky owes the Fund $5,359,536 in unpaid benefit contributions and $213,887 in unpaid Union dues for the period 2002 through 2008. Falda also determined that Kofsky Plumbing owes the Fund $792,288 in unpaid benefit contributions and $25,572 in unpaid Union dues for the period 2009 through 2012.

Falda asserts that Kofsky and Kofsky Plumbing are "the same plumbing operator"

because, among other things, the payroll records show that the two entities have "many of the same employees."  In addition, according to Falda, the two companies "operate out of the same address, have [] Richard Kofsky as management and head of labor relations, utilize the same phone numbers and have many of the same clients."  Further, Kofsky Plumbing has both Richard Kofsky and Stephen Kofsky as shareholders.  Falda also avers, based on conversations with the defendants' accountant, that "offers of compromise" are in place with the Internal Revenue Service, pursuant to which Kofsky Plumbing will pay a portion of Kofsky's tax debt.

*Procedural History*

The plaintiffs commenced this action on December 24, 2008, against Kofsky, alleging that it had failed to comply with its statutory and contractual obligations to the Fund for the period October 2008 through August 2012, and requesting an order compelling the defendants to produce all records necessary for the plaintiffs to perform an audit.  The plaintiffs sought monetary damages in the amount of $19,656, together with interest, liquidated damages, costs and reasonable attorney's fees.  On July 24, 2009, Kofsky filed a voluntary Chapter 7 petition thereby commencing bankruptcy proceedings in the United States Bankruptcy Court for the Southern District of New York.  As a consequence of that filing, the instant action was automatically stayed against the debtor.

The parties have submitted the docket sheet associated with Kofsky's bankruptcy proceedings.  The entry in the docket sheet dated July 9, 2010, refers to the Chapter 7 Trustee's Report of No Distribution and provides, in pertinent part: "I . . . report . . . that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. . . .  Claims scheduled to be discharged without payment

6

. . . $1971668.64." No other reports or written opinions are reflected either on the docket sheet for the case or the documents submitted by the parties which pertain to the bankruptcy proceeding. In particular, no submissions made to the Court indicate that the alleged alter ego or single-employer status of Kofsky and Kofsky Plumbing was addressed by the bankruptcy court. The bankruptcy case was closed on June 6, 2011.

Thereafter, on September 25, 2012, the plaintiffs filed an amended complaint in this action adding Kofksy Plumbing, Richard Kofsky and Stephen Kofsky as defendants, and including a new cause of action for fraud premised on their contentions that defendants Kofsky and Kofsky Plumbing shared an alter ego or single-employer relationship and that the individual defendants conspired to deprive the Fund of the required benefit contributions by transferring assets from Kofsky to Kofsky Plumbing in order to conceal the financial activity of the former.

## THE PARTIES' CONTENTIONS

The plaintiffs contend that Kofsky is obligated by the Agreement to make benefit contributions to the Fund, for its plumbing employees, because it violated the Agreement by failing to contribute in excess of five million dollars to the Fund. The plaintiffs also contend that Kofsky and Kofsky Plumbing are jointly and severally liable to the Fund for the unpaid benefit contributions because they acted in concert with each other to form a single employer or alter ego arrangement to avoid Fund contributions. In addition, the plaintiffs maintain that Richard Kofsky and Stephen Kofsky are individually liable to plaintiffs by virtue of their fraudulent conduct.

In support of their motion, the plaintiffs have submitted, inter alia, a Local Rule 56.1(a) Statement of Material Facts, a Memorandum of Law in Support, the declaration of the Fund's administrator, Alfred Piscino, the declaration of Falda, the Fund's auditor, the declaration of

7

Christopher Smith, Esq., the plaintiffs' counsel, and the declaration of paralegal Michelle Salerno.

The defendants oppose the motion contending that the plaintiffs' allegation that Kofsky and Kofsky Plumbing are alter egos or single employers and, therefore, jointly liable to the Fund for the benefit-contribution delinquencies, was made to and rejected by the bankruptcy Trustee. They argue that by bringing the instant motion, the plaintiffs are, among other things, trying to create "inconsistent judgments" between branches of the Federal courts.

The defendants also contend that the determination of alter ego or single-employer status is a question of fact and, therefore, cannot be decided on a motion for summary judgment. The defendants deny that they engaged in a scheme to defraud the Fund and assert that the "uncontested fact that [Kofsky Plumbing] was not formed until approximately six months after the commencement of bankruptcy proceedings belies the Fund's allegation that [it] was created as a scheme to do Kofsky's work without accepting [its] obligations."

In opposition to the instant motion, the defendants have submitted, among other things, a Local Rule 56.1(b) Statement of Material Facts, a Memorandum of Law in Opposition, the declaration of Richard Kofsky, the declaration of Lawrence Morrison, Esq., the defendants' counsel, and a copy of Richard Kofsky's May 8, 2012 deposition transcript.

In reply, the plaintiffs assert that the defendants have failed to challenge, with admissible evidence, the specific facts asserted, as they are required to do on a motion for summary judgment.  In particular, the plaintiffs contend that, with respect to their auditor's report, the defendants have provided only the conclusory statement that they "disagree" with its conclusions.

## DISCUSSION

*Legal Standard*

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

> Fed. R. Civ. P. 56(c)(1).

"The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). A moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (citation and internal quotation marks omitted).

"All reasonable inferences must be construed in the nonmoving party's favor, and if 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" Hill v. Curcione, 657 F.3d 116, 124 (2d Cir. 2011) (quoting R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997)).

*Kofsky's Obligation to Pay*

Pursuant to 29 U.S.C. §§ 1132(g) and 1145, a multi-employer plan is authorized to collect delinquent benefit contributions and employers are obligated to make such contributions under the terms of the plan or a collective bargaining agreement.[1]

In this case, it is undisputed that Kofsky entered into the Agreement with the Union and

---

[1]   29 U.S.C. 1132(g) provides, in pertinent part:

> **(2)** In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan--
>
> **(A)** the unpaid contributions,
>
> **(B)** interest on the unpaid contributions,
>
> **(C)** an amount equal to the greater of--
>
> > **(i)** interest on the unpaid contributions, or
> >
> > **(ii)** liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> **(D)** reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> **(E)** such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1145 provides in pertinent part:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

thereby became contractually obligated to make benefit contributions to the Fund.  It is also undisputed that Kofsky made some payments to the Fund in the years during which the Agreement was in place.  Further, no genuine issue of material fact exists concerning whether the Agreement, which became effective in March 2004, continues through the present. Defendant Richard Kofsky testified during his deposition that he did not recall ever sending a notice to the Union seeking to cancel or modify the Agreement and, in the absence of such notice, by its terms, that contract renewed automatically every year.  Furthermore, in their Memorandum of Law in Opposition to the plaintiffs' motion, the defendants acknowledge that they "do not claim that [Kofsky] or Richard Kofsky owe nothing to the plaintiffs."

Therefore, no genuine issue of material fact exists respecting Kofsky's liability to the Fund for unpaid benefit contributions; therefore, the plaintiffs are entitled to summary judgment on this branch of their motion.

### Liability of Kofsky Plumbing Under an Alter Ego or Single-Employer Theory

As noted earlier, only Kofsky is a signatory to the Agreement.  Hence, it must be determined whether Kofsky Plumbing may be held liable for any breach of the Agreement.

"The determinations of both single employer and alter ego status are questions of fact." Lihli Fashions Corp., Inc. v. NLRB, 80 F.3d 743, 747 (2d Cir. 1996).  "[A] collective bargaining agreement may be enforced against non-signatory employers if the employers constitute a 'single employer' and if the employees of the companies constitute a single appropriate bargaining unit."  Brown v. Sandimo Materials, 250 F.3d 120, 129 n.2 (2d Cir. 2001) (citing Lihli Fashions Corp., 80 F.3d at 747).  Separate companies are considered a "single employer" if they "are actually part of a single integrated enterprise."  Clinton's Ditch Coop. Co., Inc. v. NLRB, 778 F.2d 132, 137 (2d Cir. 1985).

11

When determining whether two companies constitute a single employer, courts look to four factors, "none of which is controlling and not all of which need be present:  (1) interrelation of operations; (2) common management; (3) centralized control of labor functions and (4) common ownership.  Family connections and the common use of facilities and equipment are also relevant." Brown, 250 F.3d at 129 n.2 (citations omitted).  Factors to be considered when determining whether defendants' employees constitute a "single appropriate bargaining unit" are whether they share a community of interests, as well as their "bargaining history, operational integration,  geographic proximity, common supervision, similarity in job function and degree of employee interchange." Id. (citations omitted).

"While the alter ego doctrine has the same binding effect on a non-signatory as the single employer/single unit doctrine, the two doctrines are conceptually distinct." Lihli Fashions Corp., 80 F.3d at 748 (quoting Truck Drivers Local Union No. 807 v. Regional Import & Export Trucking Co., 944 F.2d 1037, 1046 (2d Cir. 1991)) (internal quotation marks omitted).  "The focus of the alter ego doctrine . . . is on the existence of a disguised continuance or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or technical change in operations." Id.  "The hallmarks of the alter ego doctrine include whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." Id.

"Although developed in the context of the National Labor Relations Act, the alter ego doctrine has relevance in the ERISA context as well." Ret. Plan of the Unite Here Nat'l Ret. Fund v. Kombassan Holding A.S., 629 F.3d 282, 288 (2d Cir. 2010) (citing Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp., 139 F.3d 304, 306 (1st Cir. 1998)). "ERISA was enacted to promote the interests of employees and their beneficiaries in employee

12

benefit plans and to protect contractually defined benefits." Id. (citing Leddy v. Standard Drywall, Inc., 875 F.2d 383, 388 (2d Cir. 1989)). "To protect employee benefits, courts observe 'a general federal policy of piercing the corporate veil when necessary.'" Id. (quoting N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 647 (2d Cir. 2005)).

A review of the parties' submissions shows that Kofsky and Kofsky Plumbing do not constitute a single employer. Although the companies exhibit some of the elements of a single-employer relationship – both are engaged in the plumbing business, operate out of the same Bronx County office, and are managed and wholly or partly owned by the same individual, namely, Richard Kofsky – no evidence in the record before the Court shows that the employees of the two companies constitute an "appropriate bargaining unit," a prerequisite to establishing single-employer status. Indeed, none of the parties has addressed this issue or presented evidence from which it could be determined whether this element of the single-employer test is satisfied in the case of these defendants. Moreover, the single-employer rule implies that the companies involved must actively employ workers. In this case, however, one or both companies is defunct. It is undisputed that Kofsky Plumbing was dissolved by proclamation on April 25, 2012, and is no longer active. Also, according to Richard Kofsky, Kofsky "is now bankrupt and is no longer in business."[2] Hence, for these reasons, it cannot be said that the companies constitute a single employer.

---

[2]The plaintiffs assert that Kofsky is still in business because no discharge in bankruptcy occurred and the company never attempted to terminate the Agreement; however, even if the plaintiffs are correct in this regard, the current status of Kofsky Plumbing is undisputed.

A review of the evidence before the Court indicates that genuine issues of material fact exist respecting whether an alter ego relationship existed between Kofksy Plumbing and Kofsky; this precludes summary judgment on this point.  While there is no dispute that the two companies were both managed by Richard Kofsky, operated as plumbing service companies and shared a Bronx County office, whether Kofsky Plumbing was merely a "disguised continuance" of Kofsky or an attempt to avoid the obligations of the Agreement through a "sham transaction or technical change in operation," is not clear.  In their Local Rule 56.1(a) Statement, the plaintiffs assert that Richard Kofsky "caused the contracts, employees and work previously being performed by then debtor in bankruptcy [Kofsky] to be transferred to [Kofsky Plumbing]." In their responsive statement, defendants deny this allegation, asserting that "[Kofsky] and [Kofsky Plumbing] are both in the plumbing business but do not perform the same work." Further, in his declaration, Richard Kofsky asserts that Kofsky "declared bankruptcy for the reason that most individuals and businesses declare bankruptcy - we owed much more money than we were able to pay."  He also states that "[a]bout six months after the declaration of bankruptcy, I helped form [Kofsky Plumbing]. I did this not to evade [Kofsky's] union obligations, but simply as a means of continuing to earn income and help my family survive."

Additionally, the parties disagree about the significance of the timing of the start of operations by Kofsky Plumbing.  The plaintiffs assert that the formation of Kofsky Plumbing, after the commencement of bankruptcy proceedings, shows that it was established as an operation to evade Kofsky's obligations to its creditors and that the transaction was merely a "technical change" in the corporate form of the business – switching from one corporation to the other.  For their part, the defendants argue that the formation of Kofsky Plumbing approximately six months after the commencement of the bankruptcy proceeding "belies the Fund's allegation

that [Kofksy Plumbing] was created as a scheme to do [Kofsky's] work without accepting its obligations."

Other discrepancies in the parties' accounts of the relationship between the companies exist. The plaintiffs assert that the plumbing work performed by the two companies was identical, that they had many of the same clients and employees, and that the ownership of the businesses was the same. The defendants contend, on the other hand, that the clients of the two companies were quite different and that while Kofsky served a "high end, luxury" clientele, the clients of Kofsky Plumbing were "much less wealthy." The defendants also claim that the ownership structure of the two companies was different insofar as Richard Kofsky was the sole owner of Kofsky, while Kofsky Plumbing was owned, in part, by Stephen Kofsky. Furthermore, the defendants assert that only three of the nine union employees who worked for Kofsky were also employed by Kofsky Plumbing.[3]

Under the circumstances, the Court finds that there are genuine issues of material fact respecting whether Kofsky Plumbing was an alter ego of Kofsky and, thus, whether, Kofsky Plumbing, which is not a signatory to the Agreement, may be held liable for any breach of that contract. Therefore, the branch of the plaintiffs' motion for summary judgment which asserts liability on the part of Kofsky Plumbing is denied.

---

[3]As noted above, the defendants dispute the plaintiffs' alter ego allegation on the ground that it was made during the bankruptcy proceeding and rejected by the bankruptcy trustee. No evidence in the record supports this claim; moreover, the defendants have not shown how their claim provides a legal basis for a denial of summary judgment. Consequently, the claim is not addressed here.

*Personal Liability of Individual Defendants*

The plaintiffs argue that liability should be imposed on individual defendants Richard Kofsky and Stephen Kofsky for Fund contribution delinquencies found by the auditor during his investigation.  As noted earlier, the plaintiffs contend that the individual defendants: (1) transferred Kofsky's business to Kofsky Plumbing deliberately and wilfully, while simultaneously placing Kofsky in bankruptcy; and (2) failed to disclose the existence of Kofsky Plumbing and to submit payroll records and benefit contributions to the Fund for Kofsky Plumbing's employees.  According to the plaintiffs, the Court can "infer" that:  (i) Richard Kofsky and Stephen Kofsky established a single-employer or alter ego relationship between the corporations with the express intent of avoiding their benefit-contribution obligations to the Fund; and (ii) the Fund relied reasonably on their misrepresentations to their detriment resulting in benefit-contribution delinquencies in excess of one million dollars.

"Generally, an individual is not liable for corporate ERISA obligations solely by virtue of his role as officer, shareholder, or manager. . . . However, to the extent that a controlling corporate official defrauds or conspires to defraud a benefit fund of required contributions, the official is individually liable under Section 502 of ERISA, 29 U.S.C. § 1132."  New York Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc., No. 06 Civ. 6377, 2009 WL 362640, at *4 (S.D.N.Y. Feb. 13, 2009) (citations and internal quotation marks omitted).

"[T]o prove fraud, a plaintiff must demonstrate:  (i) a material false representation or omission of an existing fact, (ii) the defendant's knowledge of the falsity, (iii) the defendant's intent to defraud, (iv) the plaintiff's reasonable reliance upon the misrepresentation or omission, and (v) consequent damage to the plaintiff."  Cement & Concrete Workers Dist. Council Welfare

Fund, Pension Fund, Legal Servs. Fund & Annuity Fund v. Lollo, 148 F.3d 194, 196 (2d Cir. 1998).

        In this case, the plaintiffs have not established the absence of a genuine issue of material fact with respect to their claim that the individual defendants conspired to defraud the Fund.  The plaintiffs' auditor stated that he "discovered" Kofsky Plumbing during his investigation of Kofsky but no evidence showing that the defendants were attempting to conceal the existence of that corporate entity was presented to the Court.  Hence, even if Kofsky failed to inform the plaintiffs of the existence of Kofsky Plumbing, this would not by itself constitute a material false representation or omission, especially given that Kofsky Plumbing was not a signatory to the Agreement.  Also, since a disputed fact exists concerning whether Kofsky Plumbing, which is not a signatory to the Agreement, was liable for any benefit-contribution delinquencies, the failure to disclose the existence of that entity is not evidence of a misrepresentation or omission on the defendants' part.  Moreover, in the face of Richard Kofsky's denial that Kofsky Plumbing was formed with the purpose of evading Kofsky's benefit-contribution obligations to the Fund, the plaintiffs cannot demonstrate an intent to defraud.  Since the plaintiffs have not shown the absence of a disputed material fact with respect to the personal liability of the individual defendants, summary judgment on that issue is precluded.

*Scope of Liability*

        "[I]nquiries into the reasonableness of [a Fund's] audit or the adequacy of defendants' employee records are properly left for trial and the proper question in deciding [a] Fund's motion for summary judgment is whether defendant has submitted evidence that raises a factual dispute as to the amount of damages owing the Fund."  New York Dist. Council of Carpenters Pension Fund v. KW Constr., Inc., No. 07 Civ. 8008, 2010 WL 3958799, at *5 (S.D.N.Y. Sept. 8, 2010)

17

(quoting <u>Mingoia v. Santa Fe Drywall Corp.</u>, No. 04 Civ. 1712, 2005 WL 1384013, at *6 (S.D.N.Y.  June 9, 2005)).  An employer who disputes the amount of damages owed "must at least put forth affidavit and deposition testimony assert[ing] . . . facts that would cast doubt upon the accuracy of [a] Fund's calculations."  <u>Id</u>. (citation and internal quotation marks omitted).

At the same time, where an auditor makes improper judgments or unreasonable assumptions about the work performed by each employee, "a genuine dispute of material fact exists with respect to the amount of damages, thus precluding summary judgment."  <u>Id</u>. at *6; <u>see also</u> <u>Mason Tenders Dist. Council Welfare Fund v. M.A. Angeliades, Inc</u>., No. 05 Civ. 8211, 2007 WL 4208587, at *7 (S.D.N.Y. Nov. 20, 2007) (finding, following a bench trial, that defendants' liability for damages for unpaid benefit contributions was not established where "the auditor made unreasonable assumptions and questionable judgment calls which tainted the audit's findings of unreported hours").

The plaintiffs assert that they are entitled to damages in the amounts set forth in the audit report submitted in support of their motion.  Additionally, the plaintiffs contend that the defendants have failed in their obligation to challenge, with admissible evidence, the results of the audit and the amount of damages generally.  For their part, the defendants question the results of the audit report, noting that the auditor has been associated with the Fund for ten years and asserting that they "disagree" with many of the auditor's conclusions.

The audit report sets forth benefit-contribution delinquencies attributed to Kofsky Plumbing.  As discussed earlier, however, Kofsky Plumbing's liability with respect to such alleged delinquencies has not been established.  Further, by his own admission, in performing his calculations, the auditor  made assumptions about hours worked and wages paid, when data were unavailable to him.  Among other things, although no data were available for the period January

18

2008 through July 2009, benefit-contribution delinquencies for that period are included in the audit report.

Moreover, the plaintiffs have offered no evidence about the amount of covered work performed in the relevant periods, relying only on their auditor's assertion that all the work involved was covered work. Nor have the plaintiffs provided any evidence from which an inference could be drawn to the effect that all the work done by Kofsky was covered by the Agreement, relying only on the auditor's report, which itself rests upon unsupported assumptions. Therefore, a genuine dispute of material fact exists with respect to the amount of damages, thus, precluding summary judgment on this branch of the plaintiffs' motion.[4]

## **CONCLUSION**

For the reasons set forth above, the plaintiff's motion for summary judgment, Docket Entry No. 44, is granted, in part, and denied, in part.

Dated: New York, New York
       September 26, 2013

SO ORDERED:

*Kevin Nathaniel Fox*

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

---

[4]Since a determination of the amount of unpaid benefit contributions that should be awarded as damages is precluded at this stage, the amount of prejudgment interest cannot be determined at this time.

19